IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DANIELLE J. PRATER,

        Plaintiff,

vs.

CAROLYN W. COLVIN,,
Acting Commissioner of Social Security,

        Defendant.

Case No.: 3:12-cv-01639-PK

**OPINION AND ORDER**

PAPAK, Magistrate Judge:

    Plaintiff, Danielle J. Prater ("Prater"), brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied Prater's applications for Title II disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

    Born on March June 29, 1985, Prater alleges disability due to the severe impairments of fibromyalgia and multiple sclerosis ("MS") and the non-severe impairments of Sjogren's Syndrome, neurogenic extropia, depression, and anxiety. Tr. 29, 141-142. On February 20, 2009, Prater protectively filed an application for DIB alleging disability beginning August 30, 2006. Tr. 27, 122-130. Prater's application was denied initially and upon reconsideration. Tr. 27, 86, 87,

1

97-100. Prater timely requested a hearing before an administrative law judge ("ALJ"). Tr. 11-20, 21-22. On February 1, 2011, an ALJ hearing was held before the Honorable John Bauer. Tr. 32-56. On February 25, 2010, ALJ Bauer issued a decision finding Prater not disabled within the meaning of the Act. Tr. 24-40. The Appeals Council ("AC") denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. This appeal followed. Effective October 31, 2012, all parties have consented to jurisdiction by a U.S. Magistrate Judge.

## DISABILITY ANALYSIS

The Commissioner engages in a five-step sequential process in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The initial burden of establishing disability rests upon the claimant. Id. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner.

At step one, the Commissioner determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the Commissioner determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). At step three, the Commissioner determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, medical and other relevant evidence is

evaluated in assessing the claimant's residual functional capacity ("RFC"). The RFC is an assessment of work-related activities the claimant can still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e); SSR 96-8p, *available at* 1996 WL 374184, *2.

At step four, the Commissioner uses this information to determine if the claimant can perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the Commissioner finds that the claimant's RFC precludes performance of this work, the Commissioner proceeds to step five. At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 416.920(f); *Bowen*, 482 U.S. at 142. Conversely, if the Commissioner meets his step-five burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process outlined above, the ALJ found that Prater had not engaged in substantial gainful activity since the alleged outset date. Tr.29. At step two, the ALJ determined that Prater had the severe impairments of fibromyalgia and MS, and the non-severe impairments of Sjogren's Syndrome, neurogenic extropia, depression, and anxiety. Id. At step three, the ALJ found that Prater did not have an impairment, singly or in combination, that met or medically equaled the requirements of a listed impairment. Tr. 30.

Because he did not establish disability at step three, the ALJ continued the evaluation process to determine how Prater's medical impairments affected her ability to work. The ALJ resolved that

3

Prater had the RFC to perform the full range of sedentary work. Tr. 31-35. At step four, the ALJ found that Prater was unable to perform her past relevant work. Tr. 35. Finally, at step five, the ALJ considered Prater's residual functional capacity ("RFC"), age, education and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 4040, Subpart P, Tr. 35. Based on these findings, the ALJ determined that Prater was capable of performing work existing in the national economy and, thus, not disabled within the meaning of the Act. Tr. 35-36.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the Commissioner's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The Commissioner's decision must be upheld if the Commissioner's interpretation of the record is rational. *Batson*, 359 F.3d at 1193.

## DISCUSSION

4

Prater alleges that the ALJ erred by: (1) improperly discrediting her credibility, Pl.'s Br. 12 ; (2) improperly discrediting the lay witness credibility of her father, Pl.'s Br. 11; (3) improperly rejecting the medical opinon of Dr. Frances Kenyon, Pl.'s Br. 8; and (4) failing to provide substantial evidence in assessing Prater's RFC. Pl.'s Br. 4.

## I.    Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing her credibility because he failed to provide clear and convincing evidence to support his finding. Pl.'s Br. 12, Pl.'s Reply Br. 4. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that a claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however an "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947,959 (9th Cir. 2002) (citation omitted).

An ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. An ALJ

may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony is not "substantiated affirmatively by objective medical evidence." *Robbins,* 466 F.3d at 883. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. SSR 96-7P, 1996 WL 374186 (July 2, 1996).

At the hearing, Prater testified regarding her impairments and the limitations they impose on her life. Prater testified that she experienced symptoms of Multiple Sclerosis, Fibromyalgia, Sjogren's Syndrome, neurogenic extropia, depression, and anxiety, and that these symptoms impacted her personal life as well as her ability to work. Prater testified that, due to pain in her hips, she is unable to remain in one position for more than thirty minutes without needing to stretch or change positions. Tr. 77-78. Prater also testified that her vision is impaired three to four times per week, and that these impairments prevent her from driving. Tr. 63, 73, 80-81. Prater testified that she experiences "thinking problems" that make it difficult for her to answer questions and properly express her thoughts. Tr. 66-67, 81. Prater testified that she experiences numbness in her arms and legs resulting from her MS, and that this numbness makes it difficult for her to do things like grip objects, type, and walk. Tr. 72, 76-77, 78. Finally, Prater testified that she experiences fatigue at least four times per week. Tr. 78

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce her claimed symptoms. Tr. 31. However, the ALJ also found that Prater's

statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible, to the extent that they are inconsistent with the RFC. Id. The ALJ provided several reasons to support his credibility finding, including: inconsistencies between Prater's testimony and her conduct and the medical record, effective medical treatment of Prater's symptoms, and Prater's activities of daily living. Tr. 31-33.

The ALJ provided clear and convincing evidence to support his finding that Prater's testimony was not credible because of inconsistencies between her testimony, her conduct and the medical record. Differences between a claimant's testimony and her conduct are substantial evidence that an ALJ may use in a credibility determination. *Light v. Social Sec. Admin.*, 1998 F.3d 789, 792 (9th Cir. 1997). The ALJ identified several areas in the medical record that contradict Prater's testimony at the hearing.

Notably, the ALJ pointed to Prater's testimony regarding numbness resulting from her MS. Tr. 32. At the hearing, Prater testified that she experiences numbness in her arms and legs that affect her ability to grip objects and, on occasion, her ability to walk. Tr. 65, 72, 76-77, 78-79. Prater testified that she experiences this numbness "almost every day" and that the numbness lasts anywhere from a half hour to all day. Tr. 79. The ALJ pointed to several items in the record that contradict Prater's testimony. Most notable are records from June and July 2008, before Prater's date last insured of December 31, 2008, which indicated normal muscle bulk, tone, and strength, and where Prater denied experiencing any numbness, or was silent about it as a symptom. Tr. 217, 306. The ALJ also pointed to medical records that indicate that Prater had a "stable gait" through August 2010. Tr. 301-303, 312.

Prater also contends that the ALJ misconstrued the medical evidence. Pl.'s Opening Br. 14.

She argues that the ALJ erred because absent from his analysis were records indicating that Prater had experienced numbness and pain. Id. Important to the ALJ's determination in this instance is whether his conclusion was reasonable based on the evidence in the record. *See e.g. Reddick*, 157 F.3d at 720, *Thomas*, 278 F.3d at 959.

In this instance, the ALJ's conclusion is that while Prater does suffer from her alleged symptoms, her testimony regarding the frequency and intensity of those symptoms is not fully credible. Tr. 31. The amount of treatment sought by a claimant is "powerful evidence regarding the extent to which [claimant] was in pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ referred to several items in the record where Prater denied experiencing numbness, or was silent on the issue. Tr. 32, 217, 301-303, 306, 312. Prater's denial of numbness and the absence of the discussion of numbness implies that she was not experiencing the symptom.
This reasonable inference is proper and serves as substantial evidence to support the ALJ's adverse credibility finding. *Batson*, 359 F.3d at 1190.

The ALJ also identified inconsistencies between Prater's testimony and her conduct related to her "thinking problems." Tr. 32-33. At the hearing, Prater testified that she frequently experiences thinking and memory problems, such as being confused by questions and that "words do not come out the right way." Tr. 67, 81. Prater alleged that she had experienced this problem for a few years, tr. 81, and that she doubts in her ability to perform tasks like answering the phone. Tr. 67. The ALJ first pointed to exam notes from 2010 where Prater discussed having memory problems to the extent where she could not remember to take her medication each day. Tr. 32, 315. The ALJ then pointed to medical evidence that contradicts Prater's testimony. Records from July 2008 indicate that Prater's attention span, concentration, and vocabulary were good; and that her long and short-term memory

8

appeared intact. Tr. 306. Additionally, a record from August of 2010 indicates that Prater's throught processes and memory were good. Tr. 318.

Like with his assessment of Prater's testimony regarding symptoms of numbmesss, the ALJ reasonably inferred that Prater was not experiencing thinking problems and memory loss to the extent described in her testimony. *Supra.*

The ALJ also referenced Prater's "extensive daily activities" to support his finding of adverse credibility. Tr. 33. Inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms, can serve as a basis for discrediting it. *Burch v. Barnhart*, 400 F.3d at 680; *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ may discredit a claimant's testimony when he reports activities of daily living that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment") (citations omitted).

In this case, substantial evidence supports the ALJ's conclusion. In April of 2009, approximately four months after her date last insured, Prater reported that she spends her days caring for her two sons, cooking, and doing chores around the house. *See* Tr. 174-176; *see also* Tr. 158 (Third Party Adult Function Report prepared by Phil Prater, Prater's father). According to Prater, a typical day involves preparing showering and dressing, preparing meals, caring for her two children, and performing housework including sweeping, mopping, dusting, and shopping for food. *See* e.g. Tr. 69, 72, 158, 174-176, 267. Prater also testified that she spends two hours each day doing speech therapy exercises with her older son. Tr. 69. Prater also testified that she is able to drive a car and leave the house independently. Tr. 71.

Prater argues that the ALJ erred in this assessment because the activities cited by the ALJ do "not consume a substantial part of her day" because her children are involved in programs outside

the home and that she receives help with housekeeping. Pl.'s Br. 15. I disagree with Prater and find that the ALJ's use of her daily activities was reasonable. Prater's Adult Function report indicates that she spends all day performing chores. Tr. 176. The record does indicate that Prater received help in maintaining her household, but this help consisted of things like childcare or sporadic help cleaning her house. Tr. 175, 176. Her testimony also indicates that while her younger son does attend a therapy program, he still spends a substantial amount of time at home. *See* Tr. 70. In sum, the ALJ reasonably concluded that these non-work activities demonstrated the ability to perform the full range of sedentary work.

The ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Prater's subjective symptom statements. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.

## II.  Assessment of Lay Testimony

Prater argues that the ALJ erred in dismissing the lay witness evidence of her father, Phil Prater. Pl.'s Br. 11; Pl.'s Reply Br. 4; Tr. 33, 158-165. The ALJ found that the Third Party Function Report completed by Mr. Prater was generally credible, but did not provide a basis for altering Prater's RFC. I agree with the ALJ and find that his treatment of Mr. Prater's testimony was proper.

Lay testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill*, 12 F.3d at 919; 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3). If the Commissioner decides to disregard lay witness testimony, he "must give reasons that are germane

10

to each witness." *Dodrill*, 12 F.3d at 919, *See also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) and *Stout v. Comm'r,* 454 F.3d 1050, 1053 (9th Cir. 2006). While lay witnesses are not competent to testify to medical diagnoses, they may testify as to a clamant's symptoms or how an impairment affects ability to work. *Nguyen v. Chater*, 100 F. 3d 1462, 1467 (9th Cir. 1996). The Ninth Circuit has held that lay testimony may not be disregarded without comment. *Id*. The ALJ must give specific reasons for discounting the testimony of lay witnesses regarding a claimant's physical condition. *Dodrill*, 12 F.3d at 919. However, an ALJ is not required to discuss each witness' testimony on an individualized basis. "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina,* 674 F.3d at 1114 (citing *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009).

Mr. Prater's Adult Function Report discusses Prater's symptoms, including her occasional double vision, her occasional numbness, and how she experiences difficulties walking for long periods of time. Tr. 161, 163. Mr. Prater also described how Prater still cares for her sons and performs housework, cooking, and cleaning. Tr. 158.

The ALJ properly concluded that Mr. Prater's testimony, even if considered generally credible, does not provide a basis to alter Prater's RFC. The ALJ specifically pointed to Mr. Prater's description of Prater's activities of daily living, namely her capacity to care for and play with her sons. Tr. 33. The ALJ properly discounted Prater's testimony regarding her activities of daily living. *Supra*. Therefore, his conclusion that Mr. Prater's testimony did not provide a basis to alter the RFC was also proper. *See Molina*, 674 F.3d at 1114 (9th Cir. 2012).

**III.     Assessment of Medical Testimony**

Plaintiff next argues that the ALJ improperly rejected the medical opinion of Dr. Kenyon. Pl.'s Br. 8, Pl.'s Reply Br. 3.There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester*, 831 F.3d at 830. In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.2001). More weight is afforded to "opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Id. (citations omitted). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

Prater first saw Dr. Kenyon in May of 2008. Tr. 242. Dr. Kenyon performed an MRI on Prater's brain to determine if Prater demonstrated signs of demyelinating lesions, a clinical indicator of MS. Tr. 242-245. Dr. Kenyon found several suspicious lesions that were "highly characteristic of [MS]," but was unable to make a diagnosis based on the MRI alone. Tr. 242. Prater next saw Dr. Kenyon in August 2010, when Dr. Kenyon noted an improvement in Prater's depression and pain from fibromyalgia. Tr. 318.

In November 2010, Dr. Kenyon wrote a letter summarizing Prater's diagnoses, her symptoms, and their effects on her life. Tr. 320. Dr. Kenyon provided diagnoses of Multiple Sclerosis, Sjogren's Syndrome, Fibromyalgia, neurogenic extropia, depression, anxiety, and "other

lesser debilitating conditions." Id. He went on to describe that these conditions cause Prater a significant amount of pain and fatigue. Id. Additionally, Dr. Kenyon stated that Prater's conditions "are inter-related such that the symptoms from one tend to exacerbate the symptoms from the others." Id. Dr. Kenyon asserted that Prater still experienced problems with vision stemming from her neurogenic extropia, and that these symptoms affect her ability to read and drive. Finally, Dr. Kenyon asserted that Prater's MS, Sjogren's Syndrome, and Fibromyalgia would prevent her from sustaining sedentary work for longer than three weeks, and that Prater could expect to be absent from any work "more than three times per month." Id.

The ALJ discredited Dr. Kenyon's report for three reasons. First, the ALJ found that Dr. Kenyon's letter did not "specify or otherwise indicate that his opinion applies to the relevant adjudicatory time period between claimant's alleged onset in August 2006 and date last insured in 2008." Tr. 34. Second, the ALJ held that Dr. Kenyon did not offer "any specific symptoms or functional limitations other than fatigue and vision deficits that would result in more than three unscheduled absences from work each month or an inability to sustain even sedentary work." Id. Finally, the ALJ found that objective medical evidence in the record did not support Dr. Kenyon's assertions about Prater's symptoms. As such, the ALJ gave very little weight to Dr. Kenyon's opinion. The ALJ instead adopted the opinions of two nonexamining physicians: a May 2009 Physical Residual Functional Capacity Assessment, prepared by Dr. Sharon Eder; and an August 2009 Physical Summary prepared by Dr. Martin Kehrli. Tr. 34-35, 260-267, 273. The ALJ found that the opinions of Drs. Eder and Kehrli were supported by substantial evidence and consistent with the rest of the medical evidence in the record and accordingly gave them greater weight. Id.

An ALJ may reject a medical opinion that includes "no specific assessment of [the

claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition). In addition, an ALJ need not accept a medical opinion that is brief, conclusory, inadequately supported by clinical findings, or based on the claimant's non-credible testimony. *Thomas*, 278 F.3d at 957. It is well-established that an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"); *see also Thomas*, 278 F.3d at 957.

The ALJ first noted that Dr. Kenyon's letter "does not specify or otherwise indicate that his opinion applies to the relevant adjudicatory time period between [Prater's] alleged onset date of disability in August 2006 and date last insured in December 2008." Tr. 34. Indeed, Dr. Kenyon's letter is silent as to the applicable time period, only mentioning that Prater has been a patient at Dr. Kenyon's clinic since 2008. Tr. 320. Therefore, the ALJ properly dismissed Dr. Kenyon's testimony based on the lack of specific discussion of Prater's functional capacity before her date last insured. *Johnson,* 60 F.3d at 1432.

Next, the ALJ found that Dr. Kenyon's opinion "does not offer any specific symptoms or functional limitations other than fatigue and vision deficits that would result in more than three unscheduled absences from work each month or an inability to sustain even sedentary work after a

14

period of several weeks." Tr. 34. Prater argues that Dr. Kenyon's opinion is "well-supported by the record." Pl.'s Br. 11. However, the ALJ pointed out, and the record confirms, that there is no evidence to support that Prater's symptoms were "as significant as Dr. Kenyon expresses" during the relevant time period of August 2006-December 2008. Tr. 34. The ALJ therefore properly dismissed Dr. Kenyon's opinion because it did not specifically discuss how Prater's symptoms translate into specific functional deficits that affect her ability to work. *Morgan,* 169 F. 3d at 601, *Crane,* 76 F.3d at 253.

Prater argues that the ALJ erred in rejecting Dr. Kenyon's opinion for three reasons. Pl.'s Br. 10. First, Prater contends that the ALJ's adoption of the non-examining opinions was improper because those opinions neglect the opinions of two of Prater's treating physicians, Drs. Banks and Macasa. Id. Second, Prater contends that the opinions of Drs. Banks and Macasa support Dr. Kenyon's opinion and "lend credence to [Prater's] testimony." Id. Finally, Prater alleges that the ALJ improperly adopted the opinions of Drs. Eder and Kehrli because those reports are not based on the entire record. Id.

I disagree with Prater and find that the ALJ did not neglect the opinions of Drs. Banks and Macasa. Rather, the ALJ explicitly considered the opinions of Drs. Banks and Macasa and relied upon these opinions to determine Prater's RFC. Tr. 32-33, 230-233, 306. Specifically, the ALJ noted that Prater "denied any 'MS symptoms' other than urinary frequency and fatigue" in a July 2008 examination with Dr. Banks. Tr. 32, 306. The ALJ also identified records where Dr. Macasa treated Prater's fatigue. Tr. 32, 230-233. The ALJ referred specifically to Prater's fatigue when he determined her exertional level to be sedentary. Tr. 34.

Finally, the ALJ did not err in relying on the nonexamining opinions of Drs. Eder and Kehrli.

15

The ALJ properly discounted Dr. Kenyon's testimony, and found that these nonexamining opinions were supported by substantial evidence in the record. *Supra*. Additionally, the ALJ did not solely rely on the opinions of Drs. Eder and Kehrli. As discussed above, the ALJ specifically relied upon the opinions of Drs. Banks and Macasa when determining Prater's RFC. *Supra*.

In sum, the ALJ provided legally sufficient reasons, supported by substantial evidence, for discrediting Dr. Kenyon's opinion.

## IV.    RFC Determination

Lastly, Prater contends that the ALJ's RFC is improper because he "failed to properly account for [Prater's] limitations resulting from severe and non-severe impairments." Pl.'s Br. 4. Specifically, Prater argues that the ALJ failed to account for symptoms discussed in her testimony and the limitations mentioned in Dr. Kenyon's letter. Id.

As discussed above, Prater's symptom testimony was properly discredited by the ALJ. *Supra*. Further, the ALJ did not err in discrediting the opinion of Dr. Kenyon. The ALJ's RFC is based on all the information the ALJ found to be supported by substantial evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 757 (9th Cir. 1989). In other words, the ALJ's determination that the plaintiff retains the ability to perform the full range of sedentary work is rational and therefore may not be disturbed. *Batson,* 359 F.3d 1190 at 1198.

## **CONCLUSION**

For the forgoing reasons, the Commissioner's decision should be and hereby is AFFIRMED.

IT IS SO ORDERED.

Dated this 17th day of March, 2014.

                                                          Paul Papak

                                        United States Magistrate Judge